**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| ——————————————————— ) | |
| **AHMED OMAR ABU-ALI,** ) | |
| ) | |
| **Petitioner,** ) | **Case No. 1:05-cr-00053** |
| ) | **1:12-cv-00474** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ——————————————————— ) | |

**PETITIONER'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

**PRELIMINARY STATEMENT**

This memorandum is respectfully submitted by petitioner in reply to the Government's

September 28, 2012 response ("Gov't. Res.") to petitioner's motion to vacate pursuant to 28

U.S.C. § 2255.

**ARGUMENT**

1.      **The Determination to Exclude the State Department Report Was a Clear
        Abuse of Discretion Rendering Appellate Counsel's Failure to Raise the Issue
        Conduct Falling Below Professional Norms.**

The Government does not dispute that the 2004 State Department Report satisfied the

requirements for admissibility under Rule 803(8), Fed. R. Evid. (Public Records and Reports).

Rather, they argue that notwithstanding the extensive testimony the government itself elicited

about the alleged benign policies and practices of Saudi security in cases <u>other</u> than Mr. Abu

Ali's, the finding of this country's own State Department that torture is regularly utilized in that

country was irrelevant because the Report did not specifically address the interrogation of  Mr.

Abu Ali.  That argument does not withstand scrutiny.

As the government acknowledges, the "core issue" at trial was whether Mr. Abu Ali's confession was voluntary (Gov't. Res., at 9). On its direct case, the government had the Saudi interrogators relate the rules and policies that allegedly govern interrogations. According to the government itself, this testimony was offered "to demonstrate how the Mabahith policies governed the way these particular officers treated Mr. Abu Ali. The testimony was relevant and probative evidence on the core issue of whether the Mabahith had tortured Mr. Abu Ali into making a false confession." (Gov't Res., at 9). In other words, the government was trying to show that because Saudi law prohibits torture or, indeed, any form of mistreatment, Mr. Abu Ali was treated in accordance with those practices and could not have been tortured. The State Department Report went directly to this issue. It found that "credible" sources had reported that arrestees had been subject to various forms of brutality, including beatings, whippings and sleep deprivation, in order to induce confessions – the very practices to which Mr. Abu Ali was subjected (Petition, Exhibit 1, at 2). Admission would have enabled Mr. Abu Ali to argue that brutality does, in fact, occur, notwithstanding the letter of Saudi law or the government's witnesses' assertions to the contrary.

The government argues that its testimony did not open the door to admission of the Report because their witnesses all had some direct contact with Mr. Abu Ali. (Gov't. Res., at 10). This argument might have had some force had the witnesses' testimony been limited to their interactions with Mr. Abu Ali. However, it went far beyond that. The Warden of the Medina prison, for example, was permitted to testify that during the entire time he was warden, no prisoner had ever been whipped. As he testified, "Nobody ever done that" (Tr. 7/13/05, at 36-37). He further testified that using physical force on a prisoner was "impossible" because cameras are always present. "Not once has this happened," he testified (Tr. 7/13/05, at 42). A

Brigadier General swore that "violence is forbidden or is punishable by law" (Tr. 7/14/05, at 11). Mr. Abu Ali's primary interrogator in Riyadh, the "Captain," testified identically, asserting that all violence is "forbidden" (Tr. 7/19/05, at 29). The State Department Report was reasonably tailored to meet this evidence, as it would have directly refuted the witnesses' self-serving assertions that brutality is not only forbidden, it never occurs.

The cases relied upon by the government in support of the Report's exclusion are inapposite. In *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003), *United States v. MacDonald*, 688 F.2d 224 (4th Cir. 1982), and *Cubas v. Thaler*, 2011 WL 4373196 (S.D. Tex. 2011), there was no claim that the government had opened the door to the subject reports' admission. Contrary to those cases, the government herein affirmatively presented evidence about general interrogation practices and the complete absence of misconduct in the Saudi criminal justice system, thereby rendering the Report relevant. Moreover, in *Yousef*, the report was never even offered into evidence.

Had this issue been raised, it is "reasonably probable" that the Fourth Circuit would have reversed Mr. Abu Ali's conviction. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Evidentiary matters are reviewed for abuse of discretion. *United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012). A trial court abuses its discretion when it is guided by erroneous legal principles or rests upon a clearly erroneous factual finding. *Belk Incorporated v. Meyer Corp.*, 679 F.3d 146, 161 (4th Cir. 2012). That was clearly the case here.

The government was permitted to have their witnesses to testify about the rules governing Mabahith interrogations generally and, in addition, to also assert that mistreatment never occurs in the Saudi justice system. This was used to bolster their claim that Mr. Abu Ali was not mistreated and that his confession was voluntary. At the same time, however, the

3

defense was precluded from presenting contrary evidence, *i.e.*, that arrestees are subject to

mistreatment, including outright torture.  Reversal is mandated where, as here, a court's

discretion in evidentiary matters is not exercised evenhandedly.  *United States v. Sellers*, 566

F.2d 884, 886 (4th Cir. 1977); *see also United States v. Gaskell*, 985 F.2d 1056, 1063 (11th Cir.

1993) (it is an abuse of discretion to exclude otherwise admissible evidence on an issue for one

party but not the other); *United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1992)

(same).[1]

Moreover, the exclusion of the Report was not harmless.  The exclusion was

constitutional error as it impacted on Mr. Abu Ali's Sixth Amendment right to present a defense.

In *Crane*, the Supreme Court held that the Sixth Amendment right to present a defense includes

right to present evidence concerning reliability of a confession.  *Crane v. Kentucky*, 476 U.S.

683, 689-90 (1986).  Accordingly, reversal on direct appeal would have been mandated unless

the government established that the error was harmless beyond a reasonable doubt.  *Chapman v.

California*, 386 U.S. 18, 24 (1967).

As the government had to acknowledge in its response, the core issue at trial was whether

Mr. Abu Ali's purported confession was voluntary, an issue inextricably linked to whether it

could establish his guilt beyond a reasonable doubt.  Mr. Abu Ali's medical expert concluded

that he was suffering from post-traumatic stress disorder caused by torture that included

whipping and sleep deprivation.  The government's medical expert reached a contrary

conclusion.  His interrogators denied any mistreatment and were permitted to testify that

mistreatment of arrestees never occurs in Saudi Arabia.  The Report would have corroborated

---

[1] That the *Sellers* court did not use the term "open the door" is immaterial, contrary to the government's argument (Gov't. Res., at 12 n.6).  The thrust of the *Sellers* opinion is that the exercise of discretion must be balanced.

Mr. Abu Ali's medical experts, refuted his Saudi interrogators' assertions, and seriously undermined their credibility.  Given the foregoing, the Report's exclusion could not have been considered "harmless beyond a reasonable doubt."

It is for all these reasons that appellate counsel's failure to raise this issue constituted conduct falling below professional norms.  The issue was preserved.  The Report was clearly admissible under Rule 803(8), Fed. R. Evid.  The substance of the Report went to the most hotly contested issue at trial, *i.e.*, whether Mr. Abu Ali's confession was voluntary and true.  Its exclusion raised a constitutional issue subject to the *Chapman* harmless error standard. Moreover, this issue could only have strengthened the two issues that counsel chose to make central to the appeal, *i.e.*, the insufficiency of the evidence and whether the confession was voluntary.  Indeed, it is in many ways significantly stronger than those issues because it is an issue of law that would not require a challenge to the district court's factual findings. Accordingly, there is no reasonable strategy that could justify counsel's failure to raise this issue.

**2.**      **As there Was No Limiting Instruction, The Jury Was Free to Consider the Out-Of-Court Declarations for Their Truth, Thereby Violating Petitioner's Confrontation Clause Rights.**

The government asserts that Mr. Abu Ali's rights under the Confrontation Clause were not violated, because the challenged testimony was not admitted for its truth but rather to explain the course of the investigation (Govt. Res., at 17).  This argument is incorrect because (1) there never was any limitation placed on the evidence's admission, and (2) the testimony far exceeded what was necessary to establish "background."

The "Arresting Officer" testified that Mr. Abu Ali had been identified by arrestees as "Reda," a member of their al-Qaeda cell (Tr. 7/11/05, at 68).  However, the government did not limit its offer of this testimony to "background."  Instead, the government argued that the

testimony was fully admissible because the witness was a party to the conversation (*Id.*).  The

district court overruled the objection, thereby permitting the jury to consider the testimony for its

truth.  The Brigadier General gave similar testimony.  He swore that during their respective

interrogations, all members of the Faqasi cell in Medina, "actually pointed out [Mr. Abu Ali] and

that he is the one who is named Reda and Ashraf.  And he's the one who have joined the cell."

(Tr. 7/14/05, at 39).  Once again, no limitation was placed on that testimony.  Finally, the

"Captain" was even permitted to testify that it was Salem Al-Ghandi who identified the

photograph of "Reda" as Mr. Abu Ali.  The court overruled Mr. Abu Ali's objection, not because

the foregoing was admissible as background evidence, but because it could not be hearsay since

the Captain observed the identification (Tr. 7/19/05, at 19-22).[2]  Accordingly, the jury was able

to use this testimony to infer that Al-Ghandi did, in fact, identify Mr. Abu Ali as a member of the

cell.  And that was exactly what the government urged them to do in its summation.[3]

It is the detailed and repetitive nature of the purported background evidence that

distinguishes this case from *United States v. Love*, 767 F.2d 1052 (4th Cir. 1985), upon which

the government primarily relies (Gov't Res. at 17-18).  It is not clear from the *Love* opinion

whether a limiting instruction was given.  Here, of course, there was no such limiting instruction

and the jury was free to use the evidence substantively.  *Cf. United States v. Obi*, 239 F.3d 662

(4th Cir. 2001) (no *Crawford* violation where jury was instructed that officers' testimony could

---

[2] The government points out that in response to Mr. Abu Ali's objection to a prior question, the government stated that the testimony was being introduced for "notice on the listener and not for its truth of the matter."  (Gov't. Res. at 18).  But no such limited offer was made concerning Al-Ghandi's photo identification.  In any event, the court never issued a limiting instruction, and the term "notice to the listener" was never explained to the jury.

[3] The government told the jury that "Mohammed Salem al-Ghandi was the first person to identify the defendant to the Mabahith as a member of the Medina Faq'asi cell." (Tr. 11/17/05, at 175).

only be considered as background evidence, not as substantive evidence).

This case is further distinguishable from *Love*, because the government's evidence went far beyond what was necessary to show that the Saudi police had a legitimate reason to arrest Mr. Abu Ali. The purported "background" evidence was related by no fewer than three witnesses, the Arresting Officer, Brigadier General and Captain. Each related that Mr. Abu Ali's photo had been identified as "Reda," and that "Reda" was a member of a terrorist cell by numerous members of the Faq'asi Medina cell. (Tr. 7/11/05, at 68; Tr. 7/14/05, at 39; Tr. 7/19/05, at 21-22). Even if the jury had been instructed that the testimony was limited to background evidence, its sheer repetition would have undoubtedly caused them to consider the testimony as proof that Mr. Abu Ali was, in fact, "Reda" and a member of the cell. As recently recognized by the United States Court of Appeals for the First Circuit:

> The government's articulated justification - that any statement by an informant to police which sets the context for the police investigation is not offered for the truth of the statement and thus not within *Crawford* - is impossibly overbroad. It is overbroad even in classic hearsay terms, as stated in the *McCormick* treatise. What gives this situation added bite is that the "context" rationale may be used by the prosecution not just to get around hearsay law, but to circumvent *Crawford's* constitutional rule … Under the prosecution's theory, every time a person says to the police "X committed the crime" the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers.

*United States v. Maher*, 454 F.3d 13, 22 (1st Cir. 2006) (internal quotation marks and citations omitted); *see also United States v. Gomez*, 529 F.2d 412, 416-17 (5th Cir. 1976) ("tip" to law enforcement offered as background evidence should have been excluded where it relates out of court statements that point to the defendant directly as a perpetrator).

The government also argues that the out-of-court declarations were admissible for the purported non-hearsay purpose of demonstrating that Mr. Abu Ali's confession was neither

coerced nor false.  (Gov't Res., at 19-20).  In other words, the out-of-court declarations asserting that Mr. Abu Ali was "Reda" corroborated the witnesses' testimony that they did not mistreat Mr. Abu Ali and that his confession was true.  Of course, the jury was not instructed that the testimony could only be used for that purportedly limited purpose.  In any event, however, that is simply another way of using the out-of-court declarations for their truth.  "Corroborating evidence" is substantive evidence.  It is defined as "additional evidence of a different character to the same point." *Ballentine's Law Dictionary*, at 276 (3d ed. 2010) (emphasis added); *see also Black's Law Dictionary* (9th ed. 2009) (defining corroborating evidence as "evidence that differs from but strengthens or confirms what other evidence shows").  For example, eyewitnesses to the same event who testify consistently "corroborate" each other.  But they both provide substantive evidence.  Likewise, the out-of-court statements by the other arrestees corroborated the truth of Mr. Abu Ali's custodial statement only to the extent that the out of court statements were true.

The government further argues that even if the testimony was wrongfully admitted, the error was harmless since it was not the *de facto* basis for Mr. Abu Ali's convictions (Gov't. Res., at 21).  That is the wrong standard.  Admission of the testimonial out-of-court declarations of the arrestees violated Mr. Abu Ali's rights under the Confrontation Clause of the Sixth Amendment.  As a constitutional violation, reversal would have been required unless the government established that the error was harmless beyond a reasonable doubt.  *Chapman*, 386 U.S. at 24.  The case cited by the government for the "de facto basis of conviction" standard, *United States v. Obi*, 239 F.3d 662 (4th Cir. 2001), involved an alleged violation of the common law rule against hearsay, so that the Confrontation Clause was not implicated.  Here, in contrast, the subject declarations were all "testimonial"  within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004).  Thus, the *Chapman* harmless error standard applies.

Application of that standard compels a conclusion that the wrongful admission of the declarations was not harmless.  The government's only direct evidence of guilt was Mr. Abu Ali's purported confession, wherein he admitted membership in a terrorist cell and participation in the alleged conspiracies.  It was the gravaman of his defense that the confessions were false.  Through the wrongfully admitted declarations, the jury learned that other members of the alleged conspiracy had identified Mr. Abu Ali as their co-conspirator.  Such evidence would undoubtedly influence the jury in its evaluation of the veracity of the confession, such that its admission was not harmless.

This Confrontation Clause claim was a strong, preserved issue of law that was readily apparent from the record, and subject to the *Chapman* harmless error standard.  It would only have enhanced and not detracted from the sufficiency of the evidence claim, as it addressed "evidence" that should not have played a role in the jury's determination of guilt.  And, just as for the issue concerning the State Department Report, *supra*, the claim would not have involved a challenge to the district court's factual determinations.  Accordingly, counsel's failure to raise the issue cannot be justified as a reasonable appellate strategy.

> **3.    Testimony About Other Arrestees Violated the Personal Knowledge Requirement of Rule 602, Fed. R. Evid.**

The Brigadier General and Captain were permitted to testify about Sultan Jubron, Ali al-Faqasi, al-Faqasi al-Ghandi, and the acts those men allegedly committed in Saudi Arabia.  Relying on *United States v. Christie*, 624 F.3d 558 (3d Cir. 2010), and *United States v. Brown*, 669 F.3d 10 (1st Cir. 2012), the government argues that the failure to raise the issue on appeal was not ineffective, as such testimony is admissible.  This argument is incorrect, as neither case supports the admissibility of the type of evidence adduced in this case.  In *Christie*, the agent was permitted to testify that other users of a child pornography website were arrested on the same day

as the defendant and that 24 of the other users confessed.  In *Brown*, the agent testified about law enforcement's interactions with the defendants, the plan to arrest them for tax crimes, and that plan's execution.  Thus, the testimony in both cases was properly limited to information that was provided to the witness from other members of law enforcement who themselves had personal knowledge.  That was not the case here.  The Brigadier General and Captain testified that al-Faqasi and Sulton Jubron were members of al-Qaeda and were among those responsible for the May 12, 2003 explosions in Riyadh (Tr. 7/14/05, at 19; Tr. 7/19/05, at 23).  As the First Circuit noted in *Brown*, such testimony is improper where it is based upon information obtained from an informant or a co-conspirator that does not testify.  *Brown*, 669 F.3d at 24 (citing *United States v. Meises*, 645 F.3d 5, 18 (1st Cir. 2011); *United States v. Casas*, 356 F.3d 104, 118-19 (1st Cir. 2004)).  Here, the government never elicited the basis, if any, for their witnesses' conclusion that Jubron and al-Faqasi were members of al-Qaeda and/or responsible for the May 12, 2003 bombings.  Accordingly, that testimony was inadmissible.

### 4.    Failure to Assert Prosecutorial Misconduct on Appeal for "Golden Rule" Violations Made by the Prosecution Constituted Ineffective Assistance.

The government has mischaracterized the Fourth Circuit law with respect to the prosecutor's "golden rule" argument (Gov't. Res., at 26).  The Fourth Circuit has consistently held that arguments that ask the jury to put themselves in either the plaintiff's or defendant's shoes are "universally recognized as improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *U.S. v. Susi*, 378 Fed. Appx. 277, 283 n.5 (4th Cir. 2010) (quoting *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 741 (5th Cir. 1978)); *see also Ins. Co. of N. Am., Inc. v. U.S. Gypsum Co.,* 870 F.2d 148, 154 (4th Cir. 1989) ("The law is clear that ... it is improper to ask jurors to place themselves in the position of a party.")  In *Susi*, the prosecutor stated, "we all may

think that you'd never have fallen for this scheme.  First of all, none of us are going to know what we're like at a later, older age." *Susi*, 378 Fed. Appx. at 290. The Fourth Circuit found that these statements were distinguishable from "golden rule" statements in that they did not appeal to the jury's sympathy or ask the jury to put themselves in the position of a party.  Similarly, in *United States v. Kirvan,* 997 F.2d 963, 964 (1st Cir. 1993), also cited by the government, the prosecutor asked the jurors to evaluate whether an eyewitness could have actually seen what he claimed to see.  The prosecutor was not asking them to put themselves in the shoes of a party and decide the issue based on subjective criteria.

Here, in contrast to *Susi* and *Kirvan*, the prosecution asked the jury not just to use "common sense," but to depart from neutrality and subjectively evaluate Mr. Abu Ali's behavior. The prosecutor improperly appealed to the emotions and sympathies of the jury by referring to "American citizen overseas."  (Tr. 11/17/05, at 240).  The implication was that Mr. Abu Ali is less than American, and less deserving of objective consideration.  This is exactly the nature of a "golden rule" violation.  Any statement by the government asking the jury to "picture what they would be – what their expectations would be, what their desire would be if they're in that situation and contrast it with what happened in this case" (Tr. 11/17/2005, at 242), is improperly designed to encourage the jury to abandon its role as an objective trier of the facts.

While appellate counsel recognized that some of the comments made during the government's summation were prejudicial, he failed to recognize the "golden rule" violation, even though it was preserved by a timely objection.  Had appellate counsel framed his argument to include it, he would have been able to establish the "pattern" necessary for reversal premised on improper comments.  Thus, this was not a matter of legal strategy but rather conduct falling below professional norms.

11

## CONCLUSION

WHEREFORE, for all the foregoing reasons, and those set forth in the motion to vacate, this Court should issue an order vacating the judgment of conviction and ordering a new trial and granting such other and further relief, including but not limited to an evidentiary hearing, as this Court deems just and proper.

Respectfully submitted,

_____

ROBERT J. BOYLE
351 Broadway
3rd floor
New York, N.Y. 10013
(212) 431-0229
Attorney for Petitioner
(Pro Hac Vice)

*/s/ Alan R. Kabat*

_____

ALAN R. KABAT
Bernabei & Wachtel, PLLC
1775 T Street NW
Washington D.C. 20009-7102
(202) 745-1942
VA Bar No. 76898
Local Counsel for Petitioner

Of Counsel:

Mawhabahullah Ali Sadiqi
(Admitted in New York State)

DATED:  October 26, 2012

12